# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

DARWIN WALDEN,

    Plaintiff,

vs.

CORNELL SMITH, MARY DICK, DUSTIN LUTGEN and TOM CONLEY,

    Defendants.

No. 07-CV-3086-LRR

**ORDER**

_____

## I. INTRODUCTION

The matter before the court is Plaintiff Darwin Walden's Complaint (docket no. 6).

## II. RELEVANT PROCEDURAL BACKGROUND

On December 19, 2007, Plaintiff commenced the instant action. In the Complaint, Plaintiff alleges Defendants Cornell Smith, Mary Dick, Dustin Lutgen and Tom Conley are liable to him pursuant to 42 U.S.C. § 1983 for violations of his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 *et seq*. Plaintiff seeks injunctive relief and damages. On March 13, 2008, Defendants filed an Answer (docket no. 9) denying the substance of Plaintiff's claims.

The court's Scheduling Order (docket no. 13-2) set the parties' dispositive motion deadline for August 2, 2008. On July 30, 2008, Defendants filed a motion requesting the court to extend the dispositive motion deadline to September 12, 2008 ("First Request") (docket no. 17). The court granted the First Request. On September 12, 2008, Defendants filed a second request for an extension to file a dispositive motion ("Second Request") (docket no. 20). The court granted the Second Request and extended the dispositive motion deadline until October 31, 2008. On November 3, 2008, after the

dispositive motion deadline had passed, Defendants requested a third extension ("Third Request") (docket no. 22). The court granted the Third Request and extended the dispositive motion deadline to November 26, 2008. In its order, the court stated that "**[n]o further extensions will be granted**." Order Extending Dispositive Motion Deadline (docket no. 23) (emphasis in original). On December 3, 2008, a week after the expiration of the third extended dispositive motion deadline, Defendants filed a fourth request for an extension to the dispositive motion deadline ("Fourth Request") (docket no. 24). The court denied the Fourth Request.

On February 25, 2009, the court issued a trial management order setting a bench trial limited to the issue of whether Plaintiff exhausted his administrative remedies prior to filing the instant action. On March 19, 2009, the court held a final pretrial conference. At the final pretrial conference, the parties suggested that the court rule on the administrative exhaustion issue without holding a bench trial and without taking testimony. The parties submitted that their stipulated facts and uncontested exhibits would permit the court to make a ruling on the merits of the Complaint. The court took the parties' suggestion under advisement. On March 24, 2009, the court entered an order cancelling the trial and advised the parties that it would issue an order on the administrative exhaustion issue based on the parties' stipulated facts and uncontested exhibits.

### III. FINDINGS OF FACT

At the final pretrial conference, the government provided copies of exhibits A-H to the court. The court admitted these exhibits into evidence. The parties also submitted stipulated facts in their proposed final pretrial order. In light of the parties' stipulated facts and exhibits A-H, the court makes the following factual findings:

On October 10, 1995, Plaintiff entered the Iowa prison system to serve (1) a twenty-five year sentence for first-degree burglary and (2) a ten year sentence for third-degree sexual abuse. During the relevant time period, Plaintiff was housed in the Fort Dodge

Correctional Facility ("Fort Dodge Facility") in Fort Dodge, Iowa. On August 29, 2008, Plaintiff was moved to the Mount Pleasant Correctional Facility in Mount Pleasant, Iowa, and is currently incarcerated at this facility.

At all times relevant to the instant action, the Fort Dodge Facility maintained a general grievance policy ("General Policy"). The General Policy allows inmates to grieve issues relating to the conditions of their confinement at the Fort Dodge Facility.[1] The Fort Dodge Facility also maintains a religious grievance policy ("Religion Policy").[2] The Religion Policy allows inmates to grieve issues relating to the practice or establishment of religion at the Fort Dodge Facility. Plaintiff filed five grievances at the Fort Dodge Facility. These grievances form the basis of the Complaint.

On October 25, 2006, Plaintiff filed his first grievance ("First Grievance") (Exhibit E) pursuant to the General Policy. On November 13, 2006, the Associate Warden for Treatment ("Associate Warden") denied the First Grievance. The General Policy permits inmates to appeal any denial of a grievance, *see* Exhibit B at 7; however, Plaintiff did not appeal the Associate Warden's decision.

On September 21, 2007, Plaintiff filed his second grievance ("Second Grievance") (Exhibit F) pursuant to the Religion Policy. On October 17, 2007, the Statewide Religious Coordinator ("Religious Coordinator") responded to the Second Grievance and concluded that the concerns Plaintiff raised in the Second Grievance had been resolved.

The Religion Policy allows inmates to appeal the Religious Coordinator's decisions

---

[1] Exhibit B sets forth the General Policy in effect at the time Plaintiff's grievances were filed. Exhibit A contains the General Policy effective prior to April of 2006; however, the court need not consider this policy because none of the grievances at issue were filed prior to April of 2006.

[2] Exhibit D sets forth the Religion Policy in effect at the time Plaintiff filed his grievances under the Religion Policy. Exhibit C contains the Religion Policy effective until June of 2007; however, the court need not consider this policy because none of Plaintiff's religious grievances were filed prior to June of 2007.

on grievances. The Statewide Religion Review Committee ("Committee") reviews appeals made pursuant to the Religion Policy. The Committee has "a minimum of 14 days to review and consider an appeal." Ex. D at 5. The Committee meets quarterly to discuss and determine grievance appeals. If the Committee receives an appeal less than fourteen days prior to its next quarterly meeting, "the appeal shall be continued into the next quarter and considered by the Committee at that quarter's meeting." *Id.*

October 29, 2007, Plaintiff appealed the Religious Coordinator's decision on the Second Grievance to the Committee. That same day, he filed his third grievance ("Third Grievance") (Exhibit G) pursuant to the Religion Policy.

On November 1, 2007, the Committee informed Plaintiff that it had received his appeal of the Second Grievance. The Committee also informed Plaintiff that it would review the Second Grievance at its meeting scheduled for January of 2008.

On November 15, 2007, the Religious Coordinator responded to the Third Grievance. On November 21, 2007, Plaintiff appealed the Religious Coordinator's decision on his Third Grievance to the Committee. On November 28, 2008, the Committee informed Plaintiff that it would consider and rule on his Third Grievance at its upcoming meeting in January of 2008. On December 17, 2007, Plaintiff filed the instant case.

On January 8, 2008, Plaintiff filed a fourth grievance ("Fourth Grievance") (Exhibit H at 1). On January 16, 2008, Plaintiff filed a fifth grievance ("Fifth Grievance") (Exhibit H at 2). Plaintiff filed the Fourth Grievance and Fifth Grievance pursuant to the Religion Policy. On February 4, 2008, the Religious Coordinator denied the Fourth Grievance. On February 13, 2009, the Religious Coordinator denied the Fifth Grievance. On February 21, 2009, Plaintiff appealed the Fourth Grievance and Fifth Grievance.

On March 11, 2008, the Committee responded to the Second Grievance and Third Grievance and denied both of them. On April 18, 2008, the Committee responded to the

appeal of his Fourth Grievance and Fifth Grievance and denied both of them.

## IV. ANALYSIS

Plaintiff's grievances are governed by 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995, Pub. L. No. 104-34 ("PLRA"), which addresses litigation involving prison conditions. *Black Cloud v. Burt*, No. 08-CV-0033-LRR, 2008 WL 3896756, at *3 n.1 (N.D. Iowa Aug. 19, 2008) (noting § 1983 claims are subject to § 1997e(a)). Section 1997e(a) provides, "[n]o action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion in cases covered by 42 U.S.C. § 1997e(a) is mandatory[.]" *Black Cloud*, 2008 WL 3896756 at *3 n.1. Under § 1997e(a), "if administrative remedies are available, a prisoner must exhaust them.'" *Id.* (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). As the court interprets the General Policy and the Religion Policy, it concludes that an inmate exhausts a grievance only after the applicable reviewing body issues a decision on an inmate's appeal of a grievance decision. "Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id.*

### A. First Grievance

Plaintiff did not appeal the Associate Warden's decision on his First Grievance. Because Plaintiff did not exhaust his administrative remedies for his First Grievance prior to filing the instant lawsuit, the court must dismiss the Complaint to the extent it seeks relief for matters embraced by the First Grievance. *Johnson*, 340 F.3d at 627.

5

### B. *Second Grievance and Third Grievance*

Plaintiff argues that he appealed his Second Grievance and Third Grievance, but the Committee did not respond to them by the time it had indicated. Plaintiff argues that this effectively prevented him from obtaining a remedy. Plaintiff correctly argues that the Eighth Circuit Court of Appeals has held that, when an inmate cannot exhaust his or her administrative remedies because prison officials refuse to respond to a grievance, a district court may not find an inmate failed to administratively exhaust a grievance. *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002) (citing *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001)). This reasoning does not apply in the instant action. The Committee informed Plaintiff that it would address the Second Grievance and Third Grievance at its meeting in January of 2008, but Plaintiff commenced his action the month prior to that scheduled meeting. This constitutes a failure to administratively exhaust a claim. *Johnson*, 340 F.3d at 627. At the time Plaintiff filed the Complaint, there was no reason for Plaintiff to believe the Committee intended to ignore the Second Grievance and Third Grievance. In other words, Plaintiff had not given the Committee an opportunity to respond to the Second Grievance and Third Grievance at the time he filed the Complaint. The time period relevant to the instant action is the "time of filing." *Id*. At the time of filing, Plaintiff had not administratively exhausted these grievances. The fact the Committee did not address the Second Grievance and Third Grievance until March of 2008 is not relevant to this exhaustion analysis.

Accordingly, the court shall dismiss the Complaint to the extent it seeks relief for matters arising out of the Second Grievance and Third Grievance.

### C. *Fourth Grievance and Fifth Grievance*

Plaintiff initiated the grievance administrative process for his Fourth Grievance and Fifth Grievance after he filed the instant action. He submitted the Fourth Grievance and Fifth Grievance to the Religious Coordinator in January of 2008, the month subsequent to

the initiation of this case. Clearly, Plaintiff did not commence administrative review of the Fourth Grievance and Fifth Grievance, much less exhaust them, prior to initiating the instant action. Accordingly, the court shall dismiss the Complaint to the extent it seeks relief for matters embraced by the Fourth Grievance and Fifth Grievance.

In summary, the court shall dismiss the Complaint due to Plaintiff's failure to exhaust administrative remedies.

## V. COUNSEL'S CONDUCT

Defendants apparently intended to file a motion for summary judgment to dismiss the Complaint. The court infers this intent from Defendants' four requests for extensions to the dispositive motion deadline. Presumably, Defendants' motion would have contained an analysis of the facts and law similar to that contained in the instant order. However, as set forth above, despite generous extensions, Defendants repeatedly missed deadlines to file a motion for summary judgment. After the court denied the Fourth Request, the court scheduled a bench trial on this matter. When the parties' counsel appeared at the final pretrial conference, they represented that the court could easily dispose of the case based on the uncontested exhibits and the law contained in the parties' trial briefs. In other words, this case would have been ideal for summary judgment.[3] The court also notes Plaintiff's counsel, who is experienced in these sorts of cases, should have recognized early on in the instant action the exhaustion issue and avoided contesting claims upon which relief could not be granted.

Instead of filing a motion or dismissing the case, however, counsel forced the court to devote substantial time and resources preparing for a bench trial and researching and crafting what essentially amounts to a dispositive order. Defendants' counsel was spared

---

[3] The court also notes that it is conceivable a motion to dismiss under Federal Rule of Civil Procedure 12 could have been filed based on Plaintiff's assertion in the Complaint that his appeal would be considered in a meeting set in January of 2008.

7

the burden of preparing a dispositive motion at the court's expense. The court's docket is heavy. An attorney should avoid having a cavalier expectation that a court will grant his or her repeated, untimely requests for extensions. The court strongly advises both counsel to refrain from flouting the court's deadlines, pursuing meritless claims and disregarding the court's valuable time and resources.

## *VI. CONCLUSION*

For the foregoing reasons, the Complaint (docket no. 6) is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 24th day of April, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA